UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| KRISTI LYNCH,<br><br>                Plaintiff,<br><br>v.<br><br>NORTH AMERICAN COMPANY FOR LIFE AND HEALTH INSURANCE, an Iowa Corporation; CPS INSURANCE SERVICES, a California Corporation,,<br><br>                Defendants. | Case No. 1:16-cv-00055-CWD<br><br>**MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

Before the Court is Defendant CPS Insurance Services' motion to dismiss. The motion is fully briefed and ripe for the Court's consideration. Prior to the hearing scheduled on May 26, 2016, the Court found the facts and legal arguments were adequately presented in the briefs and record, and vacated the hearing. Dist. Idaho L. Rule 7.1(d). For the reasons explained more fully below, the motion will be denied.

**MEMORANDUM DECISION AND ORDER  - 1**

# BACKGROUND[1]

Plaintiff Kristi Lynch brings this action against North American Company for Life and Health Insurance, and CPS Insurance Services, for North American's alleged improper termination of an insurance policy on the life of Kathleen Sharpe, in favor of Lynch, (the beneficiary), and CPS's failure to notify Lynch of the impending termination of the policy.[2] North American issued the policy on November 7, 1989, which provided a death benefit of $750,000.00. The policy was a universal life policy, and the monthly premiums fluctuated. The policy required North American to mail notice of cancellation to Lynch's last known address at least thirty days prior to termination of the policy.

CPS acted as the agent for the policy, and procured the policy on Lynch's behalf.[3] John Cookman was the "writing agent" on the policy. To date, Lynch has paid approximately $182,631.21 in premiums.

On June 8, 2014, North American sent a "Grace Notice" letter to Lynch stating that, if $935.18 was not paid on or before August 7, 2015, the insurance coverage in the policy would terminate. North American sent a courtesy copy of the notice to CPS. Lynch claims she did not receive the June 8, 2014 letter, but she had received previous letters from North American.

---

[1] All factual allegations are summarized from the Amended Complaint (Dkt. 10) and are taken as true for purposes of Defendant CPS's motion to dismiss.

[2] The Notice of Removal indicates jurisdiction is based upon diversity of citizenship under 28 U.S.C. § 1332(a). (Dkt. 1.) Plaintiff resides in Blaine County, Idaho, and North American and CPS have their principal places of business in West Des Moines, Iowa, and Newport Beach, California, respectively. Lynch requests damages sustained as a result of Defendants' conduct. The policy provided a death benefit of $750,000.00 and Lynch asserts she has paid $182,631.21 in premiums; both figures exceed the amount in controversy requirement for diversity jurisdiction.

[3] CPS asserts in its memorandum that CPS does not admit it acted as an agent for Lynch in procuring the Policy. CPS asserts instead that it was a "wholesale producer," while Mr. Cookman was the "retail producer," as he presumably had the professional relationship with Lynch. CPS further asserts it did not agree to undertake additional duties on behalf of Lynch. CPS did not submit affidavits attesting to these purported facts.

**MEMORANDUM DECISION AND ORDER - 2**

In response to the previous letters from North American, Lynch had sent three checks in March, April and May of 2014, each for $2,000. Because prior monthly premiums had been approximately $1,000 each month, Lynch believed she had paid six months' worth of premiums. Lynch claims she was unaware that the monthly premium had increased and that there was an outstanding amount due in June of 2015. Instead, Lynch believed the premiums were paid in full.

In support of Lynch's claim that the June 8, 2014 Grace Notice was not received, she explained she receives her mail at a rural P.O. box in Picabo, Idaho, and that her mail is often misdelivered or never received. She claims she did not receive any other type of notice, and that North American did not send the letter via certified mail or other method to determine if the Grace Notice was actually delivered. CPS did not inform Lynch of the impending cancellation.

North American later terminated the policy without further notice by letter dated August 11, 2015. It appears Lynch received this letter, because thereafter Lynch wrote and called North American several times in an attempt to reinstate the policy. North American refused.

Lynch asserts three claims in her complaint. She asserts two claims against North American for breach of contract and breach of the covenant of good faith and fair dealing, and one claim against CPS for common law negligence. As against CPS, Lynch claims: (1) CPS owes a common law duty to its customers to use reasonable care regarding the issuance, maintenance, and termination of insurance policies it procures; (2) CPS breached this duty by failing to inform Lynch of the issuance of the Grace

**MEMORANDUM DECISION AND ORDER  - 3**

notice, and the impending cancellation of the policy; (3) it was a foreseeable risk that, by CPS failing to contact Lynch, the policy would be terminated; and (4) by its actions, CPS caused damage to Lynch.

CPS filed its motion to dismiss in response to the Amended Complaint on March 9, 2016. CPS argues that, under Idaho (or California) state law, CPS did not owe Lynch a duty with regard to the maintenance or cancellation of the policy between Lynch and North American. If CPS did owe Lynch a duty, CPS contends Lynch's negligence claim is barred by the economic loss rule.

## DISCUSSION

**1.      Standard for Motion to Dismiss**

A Rule 12(b)(6) motion to dismiss tests the sufficiency of a plaintiff's claim for relief. The relevant inquiry is whether the plaintiff's allegations are sufficient under Federal Rule of Civil Procedure 8(a), which sets forth the minimum pleading requirement, i.e., that the plaintiff provide a "short and plain statement of the claim showing that the pleader is entitled to relief," and "give the defendant fair notice of what the ... claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

When reviewing a motion to dismiss, the Court must accept as true all nonconclusory, factual (not legal) allegations made in the complaint, *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009); *Erickson v. Pardus*, 551 U.S. 89 (2007), and draw all reasonable inferences in favor of the plaintiff, *Mohamed v. Jeppesen Dataplan, Inc.*, 579 F.3d 943, 949 (9th Cir. 2009). "While a complaint attacked by a Rule 12(b)(6) motion to

**MEMORANDUM DECISION AND ORDER  - 4**

dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. In addition, "[f]actual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id*. Dismissal may therefore be based on the lack of a cognizable legal theory or on the absence of sufficient facts alleged under a cognizable legal theory. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001); *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988).

Further, the Court may not consider any evidence contained outside the pleadings without converting the motion to one for summary judgment. *See* Fed. R. Civ. P. 12(b); *United States v. Ritchie*, 342 F.3d 903, 907–908 (9th Cir. 2003). "A court may, however, consider certain materials-documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice-without converting the motion to dismiss into a motion for summary judgment." *Id*. at 908 (citing *Van Buskirk v. CNN*, 284 F.3d 977, 980 (9th Cir. 2002); *Barron v. Reich*, 13 F.3d 1370, 1377 (9th Cir. 1994); 2 James Wm. Moore et al., MOORE'S FEDERAL PRACTICE § 12.34[2] (3d ed.1999)). And, the Court may consider evidence upon which the complaint "necessarily relies" if: (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the document. *Branch v. Tunnell*, 14 F.3d 449, 453–54 (9th Cir. 1994). The Court may treat such documents as "part of the complaint,

and thus may assume that its contents are true for purposes of a motion to dismiss under Rule 12(b)(6)." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir.2003).

Important here, neither CPS nor Lynch submitted evidence outside of the pleadings for the Court's consideration. The Court need not convert the motion to a motion for summary judgment, and the factual assertions CPS attempts to set forth in its brief regarding the capacity in which CPS acted, or did not act, are neither relevant nor properly before the Court for its consideration at this time. *See* note 3, supra.

## 2.     Negligence Claim

To prove negligence, a plaintiff must prove the following: (1) a duty, recognized by law, requiring the defendant to conform to a certain standard of conduct; (2) a breach of the defendant's duty; (3) a causal connection between the defendant's conduct and the plaintiff's injury; and (4) actual loss or damage. *Nelson v. Anderson Lumber Co.*, 99 P.3d 1092, 1100 (Idaho Ct. App. 2004).

CPS claims Lynch's complaint is deficient because she has not asserted that CPS agreed to undertake duties beyond the initial procurement of the policy on her behalf. CPS argues Idaho law does not impose a duty upon retail insurance agents beyond the duty owed to an insured to procure appropriate insurance and advise the insured accordingly, unless there is a specific undertaking to provide services beyond the initial procurement of the policy. *McAlvain v. Gen. Ins. Co. of Am.*, 554 P.2d 955, 958 (Idaho 1976); *Adkins & Ainley, Inc. v. Busada*, 770 A.2d 135 (App. D.C. 1970).

The Idaho Supreme Court in *McAlvain* explained that a person in the business of selling insurance holds him or herself out to the public as being experienced and

MEMORANDUM DECISION AND ORDER  - 6

knowledgeable in a complicated and specialized field, and is subject to state regulation as a result. *McAlvain*, 554 P.2d at 958. Accordingly, an insurance agent may be liable in tort for negligence if the agent agrees to obtain insurance coverage for a person but later fails to do so, and such failure causes damages. *Id*. at 958-59.

*McAlvain* cited *Adkins* with approval, explaining that there may be situations which arise when the insurance agent undertakes additional duties, thereby becoming the agent of the insured because the agent agreed to undertake on the insured's behalf a duty apart from and not required by its duties owed to the insurer. *Id.* at 959 n.1 (citing *Adkins*, 270 A.2d 135 (D.C. App. 1970)). In such a case, the liability of the agent to the insured would be predicated on the general rule that an agent is liable to its principal for losses engendered by its breach of duty. *Id.*

The court in *Adkins* was faced with similar facts to the case before the Court. There, the insured brought an action against the insurer's policy-writing agent to recover damages for an alleged breach of duty. The insured had contacted the policy writing agent, Adkins & Ainley, asking for additional coverage. However, for reasons not germane to the court's decision, the insurance company elected not to cover the property and directed the policies be cancelled. Adkins & Ainley sent notice of the cancellation to the insured.

Upon receipt of the cancellation notice, the insured communicated with Mr. Ainley, the chairman of Adkins & Ainley. Mr. Ainley informed the insured the cancellation would be looked into and that the insured should "forget about the matter unless he heard from Ainley." The insured did not hear from Mr. Ainley, and believed he

**MEMORANDUM DECISION AND ORDER  - 7**

had coverage. Unbeknownst to the insured, however, Adkins & Ainley mailed a credit memorandum to the insurance broker, Mr. Norman, indicating the policy had been cancelled. The premises presumed to be insured were later destroyed by fire.

The appellate court affirmed the trial court's determination that Adkins & Ainley was liable in tort, on the grounds that the representations made by Mr. Ainley during the last telephone conversation between the insured and Mr. Ainley adjusted the relationship of the parties. 270 A.2d at 136-37. Adkins & Ainley was then acting in the role of broker for the insured and had undertaken a duty to reinstate the cancelled policies. *Id.* at 137. The court did not, however, find Mr. Norman, the original broker who procured the insurance and the same broker who later received the credit memo, liable. *Id.* The court explained that "[w]here the insurer is required to give direct notice of cancellation to the insured,"[4] as was the case in *Adkins*, "the broker is not liable for a failure to notify." *Id.* Accordingly, the credit memorandum which Mr. Norman received did not expand Mr. Norman's responsibility because he was justified in assuming the insured received notice from the insurer. *Id.*

CPS contends Lynch's of action for negligence should be dismissed with prejudice as against CPS because it is based upon Lynch's allegations that CPS owed her an ongoing duty of care with regard to maintenance and cancellation of the policy. CPS argues the Amended Complaint does not assert a claim that CPS agreed to undertake additional duties regarding the maintenance and cancellation of the policy, and Lynch's

---

[4] The court noted the parties agreed the terms of the policy required notice be sent directly to the insured to effect a cancellation. *Adkins*, 270 A.2d at 137 n.4.

**MEMORANDUM DECISION AND ORDER - 8**

claim that North American had the duty—not CPS—to notify Lynch of the intent to cancel absolves CPS from any and all liability.

The inherent flaw with CPS's argument here is the procedural posture of the case. *Adkins* and *McAlvain* were both decided by the court upon a motion for summary judgment rather than a motion to dismiss. CPS can certainly disclaim any responsibility to Lynch once it procured the policy for her. But CPS's disclaimer, and its arguments here, are unavailing. Lynch has set forth the bare minimum in her Amended Complaint to state a claim against CPS, as the Court can infer at this stage that the duty set forth in the amended complaint encompasses the very duty CPS argues (but cannot prove at this stage) it did not have.

Furthermore, dismissal without leave to amend, or as CPS puts it, dismissal with prejudice, is not proper unless it is beyond doubt that the complaint "could not be saved by any amendment." *Harris v. Amgen, Inc.*, 573 F.3d 728, 737 (9th Cir. 2009). The Court of Appeals for the Ninth Circuit has held that "in dismissals for failure to state a claim, a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv., Inc.*, 911 F.2d 242, 247 (9th Cir. 1990). The issue is not whether plaintiff will prevail but whether he "is entitled to offer evidence to support the claims." *See Hydrick v. Hunter*, 466 F.3d 676, 685 (9th Cir. 2006).

Here, the very facts CPS argues are missing from the complaint and that justify dismissal with prejudice—that CPS agreed to undertake duties regarding the maintenance

**MEMORANDUM DECISION AND ORDER - 9**

and cancellation of the policy—can be added, or here, inferred. Because of the straightforward application of Idaho law, the Court finds an amendment unnecessary, however. According to Idaho law,[5] the Amended Complaint adequately states a claim against CPS for negligence. Lynch alleges a duty owed by CPS based upon the facts set forth in the pleading. She contends CPS owed a duty to notify her of the policy termination. If Lynch proves CPS undertook a duty beyond simply procuring the insurance policy, her allegations adequately set forth a claim of negligence. Resolving the allegations requires a factual inquiry[6] which should be completed by the Court after proper discovery conducted within the guidelines of Fed. R. Civ. P. 26(b)[7] has been conducted.

3.  **Economic Loss Rule**

In a negligence action, the general rule in Idaho is that there is no recovery for pure economic loss in a negligence action, as there is no "duty" to prevent economic loss to another. *Duffin v. Idaho Crop Improvement Ass'n*, 895 P.2d 1195, 1200 (Idaho 1995). The two exceptions to this general rule are where a special relationship exists and the occurrence of a unique circumstance requires a different allocation of risk. *Duffin*, 895 P.2d at 1200–01. The "special relationship" exception generally pertains to claims for

---

[5] There may also be a choice of law issue, as CPS argues California law may apply to this matter. CPS contends California law with regard to the duties owed by policy agents is not materially different from Idaho law. Again, such an issue is more properly resolved upon a motion for summary judgment.

[6] Lynch cites authority from other jurisdictions supporting her argument that an insurance agent has an affirmative duty to notify its insured of the cancellation of a policy. Until the Court is privy to all of the facts surrounding the cancellation of the policy, and the role, if any, CPS played, the Court cannot resolve the issue.

[7] Fed. R. Civ. P. 1 and Fed. R. Civ. P. 26(b) were amended to require the parties to cooperate to "secure the just, speedy, and inexpensive determination of every action and proceeding," and to consider the "importance of the issues at state in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." The Court cautions the parties to be mindful of the proportionality and cooperation requirements of the amended rules.

**MEMORANDUM DECISION AND ORDER  - 10**

personal services provided by professionals, such as physicians, attorneys, architects, engineers, and insurance agents. *Eliopulos v. Knox*, 848 P.2d 984, 992 (Idaho Ct. App. 1992). A special relationship may exist where a party holds itself out to the public as performing a specialized function and induces reliance on superior knowledge and skill. *Duffin*, 895 P.2d at 1201.

CPS does not disagree with the above legal standards. Instead, CPS argues Lynch has not pled the existence of a special relationship or facts that would support a contention Lynch was induced by CPS to rely on an affirmative duty of performance by CPS. CPS contends the economic loss rule conclusively bars Lynch's action.

Again, CPS conflates the standards of Rule 8 and Rule 12(b)(6). All Lynch must do at this stage in the litigation is state a claim plausible on its face sufficient to give notice of her claims against CPS. Lynch may not be able to prove a special relationship existed, or that CPS undertook an obligation beyond procuring the policy. But resolving this issue requires a factual inquiry more appropriately considered upon summary judgment.

**MEMORANDUM DECISION AND ORDER - 11**

## CONCLUSION

For the reasons explained above, the Court will deny CPS's motion to dismiss. CPS has fair notice of what Lynch's claim is against it and the grounds upon which it rests, and the factual content of the Amended Complaint is sufficient here given the context of the claim. Lynch may conduct discovery to elucidate her claim of negligence against CPS.

## ORDER

**NOW THEREFORE IT IS HEREBY ORDERED:**

1)   Defendant's Motion to Dismiss (Dkt. 12) is **DENIED**.



DATED: June 2, 2016

_____
Honorable Candy W. Dale
United States Magistrate Judge